IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DAVID SPARKS; DIESEL POWER GEAR, LLC; DIESELSELLERZ.COM, LLC; DIESEL DAVE ENTERTAINMENT, INC.; TIMOTHY CALEB PERKINS; and MELISSA LUNSFORD, individually and on behalf of R.L.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 1:20-cv-00044-JNP-JCB<br><br>District Judge Jill N. Parrish |

Before the court are two Motions to Dismiss. The first is filed by Defendants David Sparks ("Sparks"); Diesel Power Gear, LLC; DieselSellerz.com, LLC; and Diesel Dave Entertainment, Inc.[1] (collectively, the "Diesel Defendants"). ECF No. 18. The second is filed by Defendant Timothy Caleb Perkins ("Perkins"). ECF No. 47. Both sets of defendants will hereafter be collectively as "Defendants." The court entertained oral argument on both pending Motions on January 28, 2021. Having reviewed the memoranda and considered the oral argument, the court denies both Motions to Dismiss.

---

[1] While Diesel Dave Entertainment, Inc. ("Entertainment") joins the Motion to Dismiss, the court notes that none of the three causes of action contained in Plaintiff Farm Bureau Property & Casualty Insurance Company's Complaint are alleged against Entertainment. *See* ECF No. 2. Accordingly, Entertainment's participation in the Motion to Dismiss is not necessary, as no cause of action has been stated against it.

## BACKGROUND

This lawsuit arises from an accident that occurred on July 11, 2019 in Moab, Utah. On that day, Perkins was driving R.L. in a 2018 Polaris Ranger XP (the "Ranger") as part of a church activity. Perkins lost control of the Ranger, causing it to overturn on the passenger side, where R.L. was sitting. R.L.'s legs were ejected from the cab of the Ranger and pinned beneath the vehicle, causing injury to R.L. that required medical treatment. On January 28, 2020, Melissa Lunsford filed a lawsuit on behalf of R.L. in Utah state court (the "Underlying Lawsuit"). The Underlying Lawsuit alleged that the vehicle involved in the accident was owned and/or controlled by the Diesel Defendants and alleged the following causes of action: negligence, *respondeat superior* liability, and loss of filial consortium. The Diesel Defendants, Perkins, and Doe Defendants 1–10 were named as defendants in the Underlying Lawsuit. Farm Bureau Property & Casualty Insurance Company ("Farm Bureau") is not a party to the Underlying Lawsuit.

Dave and Ashley Sparks had a liability policy (the "policy") on the Ranger through Farm Bureau with a $500,000 bodily injury limit. The policy period extended from May 30, 2019 to May 30, 2020, but the policy only ran from May 30, 2019 to August 30, 2019. Following the accident, Farm Bureau several times requested proof of ownership of the Ranger from Sparks, but Sparks failed to comply. Farm Bureau maintains that the ownership of the vehicle involved in the accident is unknown. Sparks also failed to provide Farm Bureau with notice of the accident or Underlying Lawsuit until February 19, 2020.

After investigating the accident and resulting claim, Farm Bureau informed Sparks and Perkins that they and the other defendants may not be covered by the policy for any damages awarded in the Underlying Lawsuit. Farm Bureau is providing a defense to Sparks and Perkins in

the Underlying Lawsuit, subject to its full reservation of rights and the resolution of this declaratory action.

On April 24, 2020, Farm Bureau filed its Complaint of Declaratory Relief (the "Complaint"). ECF No. 2. Farm Bureau alleges that there is no insurance coverage for the Ranger because Sparks has failed to verify that he had an insurable interest in the vehicle at the time of the accident. Farm Bureau also alleges that because the policy only names Dave and Ashley Sparks as insureds, and because Sparks has not proven his ownership interest in the Ranger, there is no coverage under the policy for DieselSellerz.com, LLC; Diesel Power Gear, LLC; or Perkins. Finally, Farm Bureau alleges that Sparks violated the terms of his policy when he failed to provide prompt notice of the accident and prove his ownership of the Ranger, which in turn prevented Farm Bureau from discovering facts related to the accident.

Based on the foregoing, Farm Bureau seeks a declaration from the court that (1) there is no policy coverage arising from the use of the vehicle in the accident; (2) there is no policy coverage for DieselSellerz.com, LLC; Diesel Power Gear, LLC; or Perkins; (3) there is no policy coverage for Sparks because of his failure to cooperate under the policy terms; and (4) Farm Bureau is entitled to reasonable costs. On June 15, 2020, the Diesel Defendants moved to dismiss Farm Bureau's Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 18. On December 11, 2020, Defendant Perkins joined the Diesel Defendants' Motion under DUCivR 7-1(a)(4), incorporating by reference the arguments, reasons, and relief set forth in their Motion to Dismiss

(ECF No. 18) and supporting reply memorandum (ECF No. 36). ECF No. 47.[2] The court evaluates both Motions to Dismiss in tandem.

## LEGAL STANDARD

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions, and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

In their Motions to Dismiss, Defendants advance two arguments: (1) the court should exercise its discretion and decline to hear Farm Bureau's declaratory action; and (2) Farm Bureau's failure to cooperate claim should be dismissed because Sparks adequately provided notice of the Underlying Lawsuit and proof of his ownership of the Ranger, and the claim poses a state law issue that should be decided in the Underlying Lawsuit.

---

[2] Farm Bureau filed no supplemental response to Perkins' Motion to Dismiss. Accordingly, pursuant to the court's docket text order (ECF No. 48), the court assumes that Farm Bureau stands on its briefing related to the Diesel Defendants' Motion to Dismiss.

I.    **Declaratory Action**

The Declaratory Judgment Act (the "Act") provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Tenth Circuit has recognized that this text "presents two separate hurdles." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citation omitted). First, "a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Id.* (citation omitted). Second, "even where a constitutionally cognizable controversy exists, the Act stipulates only that district courts 'may'—not 'must'—make a declaration on the merits of the controversy." *Id.* For the reasons set forth below, the court finds that this cause of action presents an "actual controversy," and the court will exercise its discretion to hear this declaratory action.

A.    **"Actual Controversy" Requirement**

The jurisdictional test for "actual controversy" within the meaning of the Act is set out in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). *See also Surefoot*, 531 F.3d at 1244. Pursuant to *MedImmune*, whether there is an "actual controversy" depends upon "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127 (citation omitted).  The Supreme Court has held that there is an "actual controversy" when an insurer seeks a declaratory judgment against the insured while a state court action is pending. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272–74 (1941). And the Tenth Circuit has established that a controversy between an insurer and its insured

regarding the insurer's rights and responsibilities under the terms of the insurance policy creates an "actual controversy." *See W. Cas. & Sur. Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968) ("[A] declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the Declaratory Judgment Act."). Because Farm Bureau brings its declaratory action to determine its rights and duties under the terms of its insurance policy with Sparks, the court finds that there is an "actual controversy" between the parties.

B. Discretionary *Mhoon* Factors

"Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980 (10th Cir. 2012) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). Thus, while the Act "vests the federal courts with power and competence to issue a declaration of rights, the question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) (citations omitted); *see also Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." (citations omitted)). In determining whether to exercise its discretion to hear a declaratory action, the Tenth Circuit has established that a district court should consider the following five factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and

6

>improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent*, 685 F.3d at 980–81 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). Each of the *Mhoon* factors is discussed below.

       1)       Factors 1 and 2: Whether a Declaratory Action Would Settle the Controversy and Clarify the Legal Relations at Issue

Under the first two *Mhoon* factors, a district court must determine whether the declaratory action would "settle the controversy" between the parties and "clarify[] the legal relations at issue." *Mhoon*, 31 F.3d at 983 (citation omitted). This inquiry "is designed to shed light on the overall question of whether the controversy would be better settled in state court." *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). "A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989); *see also Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").[3] However, as the Tenth Circuit explained in *ARW Exploration Corp. v. Aguirre*:

---

[3] *Compare Mid-Continent*, 685 F.3d at 982 (holding that a district court did not abuse its discretion in declining to hear a declaratory judgment action because the action would be "unnecessarily duplicative and uneconomical" since the state court action would "resolve all issues presented in [the] federal declaratory judgment action, whereas the declaratory judgment action would not resolve all issues presented in the state . . . action"), *with Mhoon*, 31 F.3d at 984 (holding that the district court did not abuse its discretion in entertaining a declaratory action when the declaratory action determining an insurer's duty to defend "involved no matter, factual or legal, at issue in the state case").

7

> [J]urisdiction should not be refused merely because another remedy is available. Rather, the court must decide whether the controversy can better be settled in a pending action, i.e., "whether there is such a plain, adequate and speedy remedy afforded in the pending state court action, that a declaratory judgment action will serve no useful purpose." Relevant considerations include the scope of the pending action, the nature of the available defenses in the action, whether all parties' claims can satisfactorily be adjudicated in that proceeding, and whether necessary parties have been joined.

947 F.2d 450, 454 (10th Cir. 1991) (citations omitted).

Because it is undisputed that the Ranger was listed as insured under the policy, Defendants argue that the only issue is whether Sparks was the owner of the Ranger, an issue governed by state law that is before the state court in the Underlying Lawsuit. Defendants argue that this court's determination of the Ranger's ownership would not be binding in the Underlying Lawsuit and could give rise to inconsistent rulings on the ownership issue. Farm Bureau counters that a declaration that it does not owe a continuing duty to defend or indemnify Defendants under the policy contract would settle that controversy and clarify the legal relations at issue. Further, Farm Bureau argues that the parties to the Underlying Lawsuit do not have an incentive to fully and fairly litigate ownership in the underlying case.

The court is persuaded by Farm Bureau's arguments. Farm Bureau is not a party to the Underlying Lawsuit, nor does the Underlying Lawsuit involve any insurance coverage issues. *See* ECF No. 2-1. The declaratory judgment action would resolve the issue of insurance coverage and clarify whether Farm Bureau has a duty to defend or indemnify Defendants under the policy. Because the Underlying Lawsuit and the declaratory judgment action address different issues, only the latter would settle the issue of insurance coverage and clarify the legal relationship between Farm Bureau and Defendants. Accordingly, the first two *Mhoon* factors weigh in favor of this court hearing Farm Bureau's declaratory judgment action. *See Acuity v. McGinnis Homes, LLC*, 194 F.

Supp. 3d 1204, 1210 (D. Utah 2016) (finding that the first two *Mhoon* factors weighed in favor of hearing an insurer's declaratory judgment action when the insurer was not a party to the underlying lawsuit, the underlying lawsuit "d[id] not involve [the insurer] or any insurance coverage issues," and the state court action and declaratory action "involve[d] different issues"). *Contra Runyon*, 53 F.3d at 1169–70 (affirming district court's dismissal of declaratory judgment action when the underlying state action was "a contract action between the insured and insurer" that "incorporate[d] the identical issue involved in the declaratory judgment action").

        2)        Factor 3: Whether the Declaratory Remedy Is Being Used for Procedural Fencing or to Provide an Arena for the Race to *Res Judicata*

Under the third *Mhoon* factor, the court must determine whether the declaratory judgment action is being used for "procedural fencing" or "to provide an arena for a race to *res judicata*." *Mhoon*, 31 F.3d at 983 (citation omitted). "A district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing." *Runyon*, 53 F.3d at 1170 (citation omitted) (affirming a district court's dismissal of a declaratory judgment action when an insurer filed the action one day before the insured promised to file a state court action against the insurer). "The Tenth Circuit has also 'recognized "procedural fencing" and "a race to *res judicata*" where an identical or substantially similar action is proceeding in state court.'" *Acuity*, 194 F. Supp. 3d at 1210 (citation omitted).

Defendants argue that because the Underlying Lawsuit was filed several months prior to the declaratory action, the declaratory action is an attempt to preclude the state court from determining the ownership of the Ranger, or at least to cause confusion and friction between the federal and state courts. Farm Bureau responds that it filed this declaratory judgment action as part

of its reservation of rights, and the federal and state actions are neither identical nor substantially similar.

The court agrees with Farm Bureau. Defendants' preclusion allegations are unpersuasive, as it does not appear that the coverage issue will necessarily be determined in the process of resolving the tort-based claims in the Underlying Lawsuit. Defendants' allegations of confusion and friction are otherwise speculative. Defendants also fail to identify any procedural maneuvering that would lead to *res judicata* because the federal and state court actions are not "identical or substantially similar action[s]." *Acuity*, 194 F. Supp. 3d at 1210. Moreover, "declaratory judgment actions to determine the scope of insurance coverage are precisely the type of actions for which declaratory judgement is intended to solve." *Cont'l Cas. Co. v. Bowen*, No. 2:09-cv-00810, 2010 WL 3743909, at *2 (D. Utah Sept. 22, 2010) (unpublished) (citing *Mt. Airy Ins. Co. v. Greenbaum*, 127 F.3d 15, 17 n.1 (1st Cir. 1997) ("An insurance company's claim that it has no duty to defend in another action is the archetypal case for which a declaratory judgment is appropriate.")). Thus, the third *Mhoon* factor weighs in favor of this court hearing the declaratory judgment action.

        3)      Factor 4: Whether the Declaratory Action Would Increase Friction Between Federal and State Courts and Improperly Encroach upon State Jurisdiction

The fourth *Mhoon* factor considers whether the declaratory action "would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mhoon*, 31 F.3d at 983 (citation omitted). The Tenth Circuit has recognized that when state law controls, state courts are "uniquely suited to resolve the dispute." *Mid-Continent*, 685 F.3d at 986. Still, "[f]ederal courts can issue declaratory judgment on the scope of insurance coverage, even if the federal declaratory judgment action concerns some of the same factual questions as the state court action

10

about which coverage is disputed." *Bowen*, 2010 WL 3743909, at *1 (citing *Mhoon*, 31 F.3d at 983).

Defendants argue that this factor weighs in their favor because property ownership is a state law issue and will be addressed by the state court in the Underlying Lawsuit. Defendants argue that this court's determination of property ownership would not only be non-binding, but would also encroach on the state court's jurisdiction, cause friction between the federal and state courts, and potentially result in inconsistent rulings. Farm Bureau counters that its rights and duties as an insurer must be determined and that Defendants have not identified any issues triggering unsettled questions of Utah law. Farm Bureau also references its prior arguments regarding the issue of ownership and cites to a case from another district holding that there is no requirement that coverage disputes turning on contested facts be decided in the underlying state court action, especially when such disputes are not necessarily raised in the underlying action.

The court finds that this factor also weighs in favor of hearing Farm Bureau's declaratory action. Defendants have presented no evidence that the declaratory action presents unsettled questions of Utah law.[4] Moreover, it does not appear that the ownership issue will necessarily be addressed in the Underlying Lawsuit, and there is a "live need" for a declaration of Farm Bureau's rights and duties in relation to the accident. *See Mhoon*, 31 F.3d at 983–84 (affirming district court's issuance of declaratory judgment even though the "critical question" of the insured's intent was before both the federal and state court, in part because there was "a live need for a declaration

---

[4] Even if they had, such would still not bar this court from hearing the action. *See Acuity*, 194 F. Supp. 3d at 1212 (finding that even if the declaratory action presented unsettled questions of Utah law, the district court could certify such questions to the Utah Supreme Court and thereby not encroach upon state court jurisdiction).

of [the insurer's] rights and duties," and there was a "substantial interest in deciding these issues without undue delay" (citation omitted)); *First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356, 2009 WL 2169869, at *2 (S.D. Fla. July 20, 2009) (unpublished) (exercising jurisdiction under the Declaratory Judgment Act when there was "no guarantee that the underlying state proceeding will resolve" the issue of insurance coverage). Finally, since Farm Bureau is not a party to the Underlying Lawsuit, and the issue of insurance coverage is not before the state court, there is little if any reason to believe that a ruling from this court on the coverage issue would cause friction with the state court. Thus, the fourth *Mhoon* factor supports hearing the declaratory action.

4)         Factor 5: Whether There Is a More Effective Alternative Remedy

The final *Mhoon* factor considers "whether there is an alternative remedy which is better or more effective" than the declaratory action. *Mhoon*, 31 F.3d at 983 (citation omitted). This factor requires the court to determine whether the state court is "simply better situated to provide complete relief to all parties involved in the coverage dispute." *Mid-Continent*, 685 F.3d at 986. The Tenth Circuit also considers whether there is "a live need for a declaration of [an insurer's] rights and duties" and whether either party to the declaratory action "has suggested that [the insurer] was, or could have been made, a party to the state tort action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of [the insurer's] obligations toward [the insured]." *Mhoon*, 31 F.3d at 984. In *Mhoon*, the Tenth Circuit held that the district court did not abuse its discretion in deciding to hear a declaratory action when neither party suggested that the insurer could have been made a party to the underlying state lawsuit, and there was "a substantial interest in deciding [the insurer's rights and duties] without undue delay, particularly the question of the duty to defend." *Id.* (citation omitted).

Here, unlike the parties in *Mhoon*, Defendants argue that Farm Bureau can be made a party to the Underlying Lawsuit. Defendants cite to Utah Rule of Civil Procedure 24(b) for the proposition that Farm Bureau would be permitted to intervene because the Underlying Lawsuit and declaratory action have questions of law and fact in common. Defendants argue that intervention would be a better and more effective remedy. Citing no case law or other authority, Defendants argue that Farm Bureau's intervention would serve judicial economy and would be fair since the state action commenced first and is ongoing. In response, Farm Bureau cites non-binding case law, *e.g.*, *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638–39 (1st Cir. 1989), suggesting that it cannot intervene in the Underlying Lawsuit because coverage is disputed, and a reservation of rights has been issued. In their Reply Brief, Defendants cite a Utah Supreme Court case, *Lima v. Chambers*, and argue that an insurer may intervene in a case where its interests are conflicting with those of the insured. 657 P.2d 279, 282–83 (Utah 1982), *superseded on other grounds by Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 297 P.3d 599 (Utah 2013).

This court did not find any binding authority holding that Farm Bureau's intervention in the Underlying Lawsuit is either required or possible. But the court is persuaded by Farm Bureau's cited case law providing that an insurer may not intervene in actions against its insureds where, as here, coverage is disputed, and a reservation of rights has been issued. *E.g.*, *Travelers Indem.*, 884 F.2d at 639–39. Defendants' only cited case law—*Lima*—is distinguishable. First, Defendants quote from Rule 24's permissive intervention subpart, Rule 24(b). *Lima*, by contrast, applies Rule 24's intervention of right subpart, Rule 24(a). 657 P.2d at 281–84. Further, the divergence in interests between an insurer and an insured was only one part of the *Lima* court's analysis of intervention under Rule 24(a) and was particularly weighty there because the insured was unrepresented. *See* 657 P.2d at 281–84 (articulating a four-part test for intervention of right under

Utah Rule of Civil Procedure 24(a)(2) and concluding that intervention was warranted when all four requirements were met). Moreover, *Lima* decided "whether an automobile liability insurance carrier providing uninsured motorist coverage may intervene as of right as a party defendant in a tort action between its insured and an uninsured motorist tortfeasor," *id.* at 280, and thus is predicated on facts that are distinguishable from those at issue here.[5]

Nevertheless, even assuming Farm Bureau could intervene in the Underlying Lawsuit under Rule 24, Defendants fail cite any binding authority requiring that Farm Bureau do so. Farm Bureau's declaratory action is properly before this court, and this court can provide a remedy. Further, assuming without deciding that Farm Bureau could intervene in the Underlying Lawsuit and that intervention is a "better and more effective alternative remedy" than the declaratory action, no single *Mhoon* factor is dispositive; each is given equal weight. *See Las Cruces*, 289 F.3d at 1183 (noting that although the first two *Mhoon* factors were important in the court's exercise of discretion under the Declaratory Judgment Act, they were "only factors in the analysis; they are not determinative"). Because the preceding four factors weigh in favor of this court hearing Farm Bureau's declaratory action, even if the fifth factor were to weigh in favor of Defendants, that would not compel the court to decline to hear the action.

On balance, the court finds that the *Mhoon* factors weigh in favor of it exercising its discretion to hear Farm Bureau's declaratory action. Accordingly, Defendants' Motions to Dismiss on this ground are denied.

---

[5] The *Lima* court also appears to have limited its holding to uninsured motorist cases in clarifying that its holding did not mean that "in each and every uninsured motorist case intervention must be allowed," and stating that a case-by-case determination must be made. *See* 657 P.2d at 284.

## II. Failure to Cooperate Claim

Defendants argue that Farm Bureau's failure to cooperate claim against Sparks should be dismissed because Sparks provided notice of the Underlying Lawsuit and proof of his ownership of the Ranger as soon as he was able to do so. Defendants also argue that the failure to cooperate claim is rooted in state law and thus is better left to the state court in the Underlying Lawsuit, where discovery has not yet begun. Farm Bureau responds that its allegations of Sparks's failure to provide timely notice of the Underlying Lawsuit and proof of his ownership of the Ranger sufficiently state a claim for noncooperation.[6]

Under Utah law, "[a]n insurer seeking to avoid coverage of a claim for reasons of noncooperation must establish two things: (1) that it used 'reasonable diligence' to secure the insured's cooperation; and (2) that the noncooperation 'substantially prejudiced' its ability to defend against the claim in question." *Doctors' Co. v. Drezga*, 218 P.3d 598, 605 (Utah 2009) (citation omitted). "The burden for demonstrating reasonable diligence and substantial prejudice rests on the insurance company." *Id.* (citation omitted). The court will evaluate Farm Bureau's Complaint to determine whether it has plausibly stated a claim for noncooperation.

---

[6] Farm Bureau also argues that, if the court does not deny Defendants' Motions to Dismiss, the court should convert the Motions into motions for summary judgment under Federal Rule of Civil Procedure 12(d) because of Defendants' reliance on documents outside of the Complaint. While it is generally true that "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings," *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999) (citation omitted), the court will not consider the documents that Defendants attached to their Motions to Dismiss in evaluating the sufficiency of Farm Bureau's Complaint. Thus, the court declines to convert Defendants' Motions to Dismiss into motions for summary judgment.

A. Reasonable Diligence

To establish "reasonable diligence," an insurer must "show that it 'used the same degree of diligence to secure the insured's cooperation that would have been exercised by a reasonable and prudent person where the cooperation of the insured would be to its advantage in protecting it against liability, rather than to relieve it therefrom.'" *Doctors' Co.*, 218 P.3d at 605–06 (citation omitted).

The court finds that Farm Bureau has sufficiently alleged facts to establish reasonable diligence. Farm Bureau alleges that Sparks did not provide notice of the Underlying Lawsuit until more than seven months after the accident occurred, and that it has made "several unsuccessful attempts to obtain and confirm ownership of the vehicle involved in the [a]ccident" from Sparks and his counsel. ECF No. 2 ¶¶ 53–54. The court finds that these allegations sufficiently demonstrate reasonable diligence on the part of Farm Bureau to seek cooperation from Sparks so that Farm Bureau may determine the scope of its coverage in relation to the accident.

B. Substantial Prejudice

To establish "substantial prejudice," an insurer must allege, beyond mere self-serving and conclusory allegations, how the noncooperation put the insurer at a material disadvantage. *See Doctors' Co.*, 218 P.3d at 606 (finding no substantial prejudice when an insurer's briefs "d[id] not suggest a single reason why the . . . suit would have ended differently" had there been cooperation, and when the insurer's allegations were merely "self-serving and conclusory").

The court finds that Farm Bureau has adequately alleged substantial prejudice. Farm Bureau alleges that Sparks's failure to provide prompt notice of the accident and proof of ownership of the vehicle involved has "prevented Farm Bureau from discovering facts relating to the incident on July 11, 2019." ECF No. 2 ¶ 55. Defendants argue that Farm Bureau has not been

materially prejudiced by Sparks's delayed notice and proof of title because Sparks provided each as soon as he reasonably could, discovery has not started in the Underlying Lawsuit, and there is still ample time for Farm Bureau to conduct discovery should it elect to intervene in the Underlying Lawsuit. Given the court's obligation to construe the Complaint in the light most favorable to Farm Bureau, the court finds that Farm Bureau's allegations are sufficient to satisfy the substantial prejudice element of a noncooperation claim at this stage. Farm Bureau's allegations are not merely "self-serving and conclusory," but rather specifically and factually allege how it has been substantially prejudiced by Sparks's alleged noncooperation. Moreover, because Farm Bureau is not a party to the Underlying Lawsuit and the Underlying Lawsuit is grounded in tort, the noncooperation claim will only be addressed in the Underlying Lawsuit if Farm Bureau intervenes. And as previously noted, the court finds no requirement for Farm Bureau to do so.

Accordingly, since Farm Bureau has adequately pleaded each element of a noncooperation claim, the court declines to dismiss Farm Bureau's Complaint.

## CONCLUSION AND ORDER

For the foregoing reasons, the court will exercise jurisdiction over Farm Bureau's declaratory action and finds that Farm Bureau has adequately stated a noncooperation claim. Accordingly, Defendants' Motions to Dismiss (ECF Nos. 18, 47) are hereby DENIED.

DATED January 29, 2021.

BY THE COURT

*/s/ Jill N. Parrish*

Jill N. Parrish
United States District Court Judge